# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sharon Johnson Coleman | Sitting Judge if Other than Assigned Judge | Jeffrey Gilbert |
|---|---|---|---|
| **CASE NUMBER** | 11 C 8203 | **DATE** | 2/11/2013 |
| **CASE TITLE** | Katz vs. Jewish Community Centers of Chicago | | |

**DOCKET ENTRY TEXT**

WRITTEN Opinion and Order entered by the Honorable Jeffrey T. Gilbert on 2/11/2013: Plaintiff's Motion to Compel Discovery Responses [36] with respect to Plaintiff's Document Requests Nos. 5, 6, 7, 10, 15, 16, and 17 is granted in part and denied in part [62]. Defendant shall produce the annual budget package it prepared for fiscal years 2006 through 2010 and the related analysis of actual performance compared to budget for each of these years, including the budgets and analysis of actual performance against budget for the Early Childhood Services program. The Court understands, based upon the argument during the hearing on Plaintiff's Motion [36] on 2/7/13, that Defendant already has produced this information for FY 2011. The Court's intent is that Defendant produce the same information for fiscal years 2006 through 2010. This case is set for a status hearing on 2/21/13 at 10:30 a.m. for the limited purpose of making sure the parties are on the same page regarding the documents encompassed by this order and, if necessary, setting a date for production of the documents. If the parties are in agreement on these points such that the status hearing is unnecessary, then counsel should telephone the Court's courtroom deputy and the status hearing will be stricken.

(See Statement for further details.)

■[ For further details see statement.]

Notices mailed by Judicial staff.

## STATEMENT

As framed, the referenced Document Requests appear to be overbroad and duplicative in a number of respects. Plaintiff, however, has cured that problem. For present purposes, she has limited her requests to the annual budget package prepared by Defendant for fiscal years 2006 through 2010 and the related analysis of actual performance compared to budget projections for each fiscal year including the relevant data for the Early Childhood Services program in which Plaintiff was employed by Defendant. Defendant apparently already has produced this information for FY 2011, and Plaintiff now asks the Court to order Defendant to produce the same information for fiscal years 2006 through 2010.

Plaintiff's limited request is fair given the allegations in her Complaint. It seeks information that is relevant or reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1).

Plaintiff alleges at paragraphs 20 and 21 of her Complaint that Defendant, "during the final years of Plaintiff's employment . . . discharged and/or obtained the resignation, transfer, or demotion of older management employees in substantial disproportion to the ages of all employees and management employees." Compl. ¶ 20. Plaintiff further alleges that Defendant "engaged in a series of pretextual 'reductions in force' designed to discharge workers over forty (40) years of age by 'eliminating' the older

employees' positions [and then] re-establish[ing] the 'eliminated' position under a guise of a different title." Compl. ¶ 21. "Defendant Corporation would then hire a new individual under the age of forty (40) to undertake the re-established position and/or move or reposition an existing employee under the age of forty (40) to undertake the re-established position. *Id.*

Plaintiff, at oral argument, elaborated on these allegations. She argued that Defendant prepared budget projections that called for, or were intended to justify, reductions in its work force based upon relatively dire assumptions concerning anticipated revenues (including grants and other sources of funds) in the coming fiscal year or the number of people Defendant would serve in the next fiscal year, but the dire assumptions were not borne out by actual revenues, grants or funding sources, and/or actual numbers of people including children served during a given year. Plaintiff argues that this pattern or practice in prior years is evidence of Defendant's discriminatory intent to terminate older employees including, importantly, Plaintiff herself in August 2010. Compl. ¶ 10.

In light of these allegations and contentions, the budget packets including projections compared to actual performance data contain potentially relevant information. Plaintiff was employed by Defendant for 15 years ending on August 27, 2010. Compl. ¶ 10. She alleges Defendant engaged in discriminatory conduct "during the final years of Plaintiff's employment." Compl. ¶ 20. The data sought by Plaintiff in her Document Requests covers roughly the final one-third of the time Plaintiff was employed by Defendant. Broadly construed, these are "the final years of Plaintiff's employment." Compl. ¶ 20.

Although this is a fairly long period of time, the documents encompassed by Plaintiff's more limited request do not appear to be particularly voluminous nor would they be overly burdensome for Defendant to produce. Based upon the give and take during the argument conducted on 1/7/13, each budget packet contains between 100 and 200 pages. At the high end of that estimate, we are talking about production of roughly another 1,000 pages of documents in addition to the budget packet for FY 2011 that Defendant already has produced. This is less than a banker's box of documents; not particularly burdensome in the overall scheme of discovery. And these budget packets most likely already are gathered in one place or easily located; there is no need to search high and low for them.

Defendant argues that Plaintiff should be limited to budget documents for FY 2011, the year in which she was terminated in what Defendant argues was a legitimate and necessary reduction in force. But Defendant already has produced to Plaintiff its audited financial statements for fiscal years 2006 through 2011 and summaries of the participant enrollment in the Early Childhood Services program for those same years in response to Plaintiff's Document Requests 5, 6, 7, 10, 15, 16, and 17. Accordingly, Defendant has acknowledged at some level that financial documents for this longer period of time are potentially relevant to the claims being asserted by Plaintiff. There does not appear to be a principled distinction between the documents that already have been produced and the documents that Defendant has not produced.

Finally, the cases the Court cited in its earlier order [58] on Plaintiff's Motion to Compel Discovery Responses [36], cautioning that information concerning an alleged pattern or practice of discrimination is at best only collateral evidence of discrimination by a defendant in a single plaintiff employment discrimination case, do not mandate a different result with respect to the budget information that is the subject of this order. The financial and budget documents sought by Plaintiff in the Document Requests that are the subject of this order are in a different category than the Interrogatories and Document Requests covered by the Court's previous order [58]. Those discovery requests sought information about the hiring and firing of employees other than in connection with the reduction in force during which Plaintiff was terminated, in different departments across Defendant's metropolitan operations, and involved different supervisors than those that

| STATEMENT |
|---|

supervised Plaintiff or had a role in her termination. As such, those discovery requests sought information that was much farther afield and more attenuated from Plaintiff's claims as alleged in the Complaint, and from evidence within a spectrum that legitimately could be said to be potentially relevant or likely to lead to the discovery of admissible evidence in this case. The cited cases involved situations similar to the instant case in which courts denied plaintiffs access to similar information about other employees in single plaintiff discrimination cases. *See Balderson v. Fairbanks Morse Engine Division*, 328 F.3d 309 (7th Cir. 2003); *Radue v. Kimberly Clark Corp.*, 219 F.3d 612 (7th Cir. 2000); *Gilty v. Village of Oak Park*, 919 F.2d 1247 (7th Cir. 1990). *See also Sommerfeld v. City of Chicago*, 613 F. Supp. 2d 1004 (N.D. Ill. 2009).

The budget and financial information that is the subject of this order fits more closely within the spectrum of evidence that can be said to be at least potentially relevant to Plaintiff's argument that the reduction in force that resulted in her termination was a pretext for discrimination by Defendant against older employees including Plaintiff in August 2010. Whether this evidence ultimately will be admissible at trial is not something this Court must deal with at this point in time. It is sufficient that the information is potentially relevant and admissible. *Askew v. Waukegan Public School District 60,* 767 F. Supp. 2d 923, 931 (N.D. Ill. 2011) ("Whether evidence of such a policy (if any) would be admissible at trial need not be resolved at this juncture.").

Accordingly, for these reasons, Defendant must produce to Plaintiff as soon as it can the annual budget package it prepared for fiscal years 2006 through 2010 and the related analysis of actual performance compared to budget for each of these years, including the budgets and analysis of projections versus actual performance for the Early Childhood Services program. If the parties cannot agree about the documents that must be produced pursuant to this order, the Court will resolve any dispute at the status hearing on 2/21/13 at 10:30 a.m.

It is so ordered.